■ VANTAGE PETROLEUM, Respondent, v BOARD OF ASSESSMENT REVIEW OF THE TOWN OF BABYLON et al., Respondents, and BOARD OF EDUCATION, LINDEN-HURST UNION FREE SCHOOL DISTRICT No. 4, TOWN OF BABYLON, Appellant. — In a proceeding pursuant to article 7 of the Real Property Tax Law to review the assessment of petitioner's real property, the Board of Education, Lindenhurst Union Free School District No. 4, Town of Babylon, appeals from an order of the Supreme Court, Suffolk County (Geiler, J.), dated February 4, 1981, which denied its motion for leave to intervene. Order affirmed, without costs or disbursements. Special Term correctly held that intervention by the appellant Board of Education, Lindenhurst Union Free School District No. 4, Town of Babylon (hereinafter the Board of Education) was not warranted in this tax certiorari proceeding pursuant to article 7 of the Real Property Tax Law because of (1) the Legislature's amendment of the so-called Suffolk County Tax Act (L 1980, ch 837, eff Sept. 1, 1980, amdg L 1920, ch 311, § 3, as amd by L 1958, ch 95) and (2) a decision of Special Term in *Matter of Sperry Rand Corp. v Board of Assessors of County of Nassau* (Supreme Ct, Nassau County, July 22, 1980, Farley, J., affd 77 AD2d 822, mot for lv to app dsmd 52 NY2d 702). It has been consistently held that intervention should be permitted where the proposed intervenor has a real and substantial interest in the outcome of the proceeding (*Plantech Housing v Conlan,* 74 AD2d 920; *Matter of Petroleum Research Fund,* 3 AD2d 1; *Matter of Raymond v Honeywell,* 58 Misc 2d 903). In accordance with that general principle, there exists a body of case law which permits a school district to intervene in a proceeding pursuant to article 7 of the Real Property Tax Law, but only where it has a direct financial interest in the outcome of the proceeding in the form of a potential liability to the petitioner for a tax refund pursuant to section 726 (subd 1, par [c]) of the Real Property Tax Law (*Plantech Housing v Conlan, supra; Matter of Xerox Corp. v Sanger,* 79 Misc 2d 480; *Matter of Stanford Assoc. v Board of Assessors of Town of Niskayuna,* 67 Misc 2d 477, affd 39 AD2d 800; *Matter of Raymond v Honeywell, supra; Matter of Magee v Board of Assessors of Town of Nelson,* 49 Misc 2d 499, affd *sub nom. Matter of Fieser v Board of Assessors of Town of Nelson,* 24 AD2d 1045). However, those cases are inapplicable to the case at bar by virtue of the Legislature's amendment of the Suffolk County Tax Act (L 1980, ch 837, § 1). Subdivision 3 of that statute now provides as follows: "§ 3.

Town assessment roll official. The assessment roll prepared by the assessors of each town shall be the official assessment roll for the town and for every school district and other tax district lying within the town for which said assessment roll was prepared so far as it concerns property lying within such school or other tax district. Any final order in a proceeding under article seven of the real property tax law which orders or directs the correction or striking of an assessment appearing on that portion of a town assessment roll applicable to a school district, shall be binding on such town. Any amount of taxes of such school district at any time collected upon such assessment in excess of the amount which would have been paid had such assessment been made as determined by such order, shall be refunded by the county and shall be charged by the county to such town. In no event shall such refund be charged by the town to such school district. The assessors of any town may make copies of any assessment roll or of a portion thereof, or tax roll, which copy when certified by them as correct may be used in all respects as and for an original roll or portion thereof." Pursuant to the amendment, a school district in Suffolk County is no longer liable for refunds of the school portion of the property tax that is owed a petitioner as a result of tax certiorari proceedings instituted pursuant to article 7 of the Real Property Tax Law. Rather it is the town which must pay the refund. Accordingly, the appellant Board of Education's attempt to intervene in the case at bar, which is based solely on the speculative theory that a reduction in the assessment of petitioner's property may result in an undervaluation of the property and a decrease in the school district's tax base, must be rejected (cf. *Matter of Board of Educ. v Parsons,* 61 Misc 2d 838, 842-844). We have been made aware of the uncontested fact that even prior to the Legislature's 1980 amendment of the Suffolk County Tax Act, there was a common practice in Suffolk County to have the towns refund any overpaid taxes and not charge any part of them back to the school district. We are also aware that during the period that this practice was prevalent, one court in Suffolk County stated, in dicta, that intervention by a Suffolk County school district in a tax certiorari proceeding commenced pursuant to article 7 of the Real Property Tax Law would be allowed. Specifically, in *Matter of Rapone v Shokey* (43 Misc 2d 87), Special Term held that petitioner's failure to serve notice of the article 7 proceeding on the clerk of the school district, pursuant to former subdivision 2 of section 708 of the Real Property Tax Law, was not a jurisdictional defect. However, the court in *Rapone* went on to note that the legislative intent was to give reasonable notice to a school district of a proceeding by which it might be affected and that the school district would, therefore, be permitted to intervene if it so desired. Nevertheless, it must be stressed that despite the existence of an unofficial practice in Suffolk County at the time of the *Rapone* decision, by which school districts in that county were relieved of the necessity of making tax refunds, those school districts were nevertheless liable, by law, for such refunds (see Real Property Tax Law, § 726, subd 1, par [c], and its predecessor, Real Property Tax Law, former § 1316, subd 5). It is therefore fair to assume that the dicta in *Rapone* regarding intervention by a school district was based upon the potential tax liability of the school district for tax refunds and not merely because its tax base might be affected by a reduction in the assessment of the taxpayer's property. Finally, in *Matter of Sperry Rand Corp. v Board of Assessors of County of Nassau* (*supra*) the corporate petitioner commenced a proceeding pursuant to article 7 of the Real Property Tax Law to review the tax assessments on its property for the years 1972-1979. The petitioner claimed there had been an overvaluation and that it was entitled to a tax refund. The school district, on the eve of trial, sought leave to intervene in the proceeding. The *Sperry Rand* court was confronted with a statute which also

relieved the school district of liability for tax refunds in tax certiorari cases (Nassau County Administrative Code, § 6-26.0, subd b, par 3, cl [c]; see L 1948, ch 851, § 2). In addition, section 6-17.3 of said code specifically provided that in any proceeding to review an assessment, it was not necessary to deliver a copy of the petition or notice to the clerk of any school district, notwithstanding the provisions of any other general or special law to the contrary. In denying the motion to intervene in *Sperry Rand,* Special Term held that the legitimate interest that school districts have in their tax base when preparing budgets was not a ground for intervention in a proceeding to review a tax assessment pursuant to article 7 of the Real Property Tax Law and that the "right to be forwarned of impending changes in valuation affecting its tax base [existed] only when the school district [was itself] entitled to notice of the tax review proceeding" (Real Property Tax Law, § 708), because the requirement for notice is based on the school district's liability for the payment of refunds. On appeal to this court, the school district in *Sperry Rand* specifically argued, *inter alia,* that it had standing to intervene in a proceeding to review a tax assessment, even if it could not be held liable for a tax refund. This court affirmed without opinion (*Matter of Sperry Rand Corp. v Board of Assessors of County of Nassau,* 77 AD2d 822, *supra*), thereby rejecting the proposition that a school district can intervene in a proceeding to review a tax assessment pursuant to article 7 of the Real Property Tax Law, when the school district cannot be held liable for any tax refund. It is true that *Sperry Rand* can be distinguished from the case at bar in two areas: (1) the motion to intervene in *Sperry Rand* was made on the eve of trial and (2) pursuant to section 6-17.3 of the Nassau County Administrative Code, the petitioner in that case was relieved of the obligation to deliver a copy of the petition in the tax review proceeding to the clerk of the school district. We do not find either of these distinctions to be persuasive. With regard to the lateness of the motion to intervene in *Sperry Rand,* suffice it to say that this issue played no real part in the reasoning of Special Term in that case. With respect to the notice factor, it is true that the Legislature, in relieving school districts in Suffolk County from liability from tax refunds by the enactment of chapter 837 of the Laws of 1980, did not simultaneously eliminate the requirement of section 708 of the Real Property Tax Law that notice of the tax review proceeding be given to those districts. However, it is our view that the Legislature's failure to relieve petitioners in proceedings pursuant to article 7 of the Real Property Tax Law of the duty to give Suffolk County school districts notice of tax certiorari proceedings pursuant to section 708 of that law, was merely an oversight and does not indicate a legislative intent to allow intervention by Suffolk County school districts in tax certiorari proceedings despite the fact that chapter 837 of the laws of 1980 ended the potential tax refund liability of those school districts. Finally, we do not agree with the dissenters' view that the interests of the school district which is seeking to intervene, and those of the town, which is defending the underlying proceeding, are so divergent so as to render the town's representation of the school district's interests as "inadequate" within the meaning of CPLR 1012 (subd [a], par 2). Accordingly, the order appealed from is affirmed. Mangano, Weinstein and Niehoff, JJ., concur.

Lazer, J. P., dissents and votes to reverse the order appealed from and to grant the motion for leave to intervene, with the following memorandum, in which Gibbons, J., concurs: May a school district in Suffolk County intervene in a tax review proceeding which challenges a real property assessment within the district? Contrary to the majority's view, I believe such a school district's real and substantial interest in the maintenance of its tax base entitles it to the grant of intervention. My opinion is unaltered by the recent amendment to

the Suffolk County Tax Act relieving school districts in that county of any obligation to refund tax overpayments. The instant appeal derives from a tax review proceeding brought against the assessing authorities of the Town of Babylon when the taxpayer's application to reduce the assessment of its property from $9,300 to $2,790 was denied. In accordance with subdivision 3 of section 708 of the Real Property Tax Law, notice of the review proceeding was mailed to the clerk of the Lindenhurst Union Free School District No. 4 where the property is located. The Board of Education of that school district then moved to intervene in the proceeding as a party respondent alleging that it was the recipient of two thirds of the tax revenue derived from the assessment in issue and that the necessity for intervention was demonstrated by the multitude of similar proceedings involving property in the district. Although the intervention motion was unopposed, Special Term denied it on the ground that the Suffolk County Tax Act (L 1920, ch 311, § 3, as amd by L 1958, ch 95, L 1980, ch 837) renders school districts in Suffolk County immune from the liability to refund overpaid taxes. Intervention may be sought as a matter of right or by permission (CPLR 1012, 1013). Intervention may be had as of right "when the representation of the [proposed intervenor's] interest by the parties is or may be inadequate and the [proposed intervenor] is or may be bound by the judgment" (see CPLR 1012, subd [a], par 2). Inadequacy of representation is generally assumed when the intervenor's interest is divergent from that of the parties to the suit (McLaughlin, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR 1012:3, p 152), while *res judicata* principles determine whether the movant may be bound by the judgment (see *Matter of Unitarian Universalist Church of Central Nassau v Shorten,* 64 Misc 2d 851, vacated on other grounds 64 Misc 2d 1027; Siegel, New York Practice, § 180). Where intervention is sought by permission and not as of right, the factors for consideration are whether the proposed intervenor's claim or defense raises a question of law or fact in common with the main action, whether the intervention will unduly delay the determination of the action, and whether it will prejudice the substantial rights of any party (CPLR 1013). In actuality, however, the distinctions between intervention by right and by permission are not overly significant. Intervention should be permitted where the proposed intervenor has a real and substantial interest in the outcome of the proceeding (*Plantech Housing v Conlan,* 74 AD2d 920; *Matter of Petroleum Research Fund,* 3 AD2d 1; *Matter of Raymond v Honeywell,* 58 Misc 2d 903; 3 Carmody-Wait 2d, NY Prac, § 19:135). As one commentator has noted, the focus should be "on whether the prospective intervenor has a sufficient stake in the outcome and enough to contribute to the resolution of the controversy to justify [its] inclusion" (Shapiro, Some Thoughts on Intervention Before Courts, Agencies, and Arbitrators, 81 Harv L Rev 721, 726). Patterned after former rule 24 of the Federal Rules of Civil Procedure, the CPLR intervention provisions were intended to be liberally construed (see *Bay State Heating & Air Conditioning Co. v American Ins. Co.,* 78 AD2d 147; *Matter of Eberlin v Herman,* 18 AD2d 1068; *Mann v Compania Petrolera Trans-Cuba,* 17 AD2d 193; Twelfth Ann. Report of NY Judicial Council, 1946, pp 218-232; 2 Weinstein-Korn-Miller, NY Civ Prac, par 1012.05; see, also, CPLR 104). Under the prevailing view in this State, school districts may intervene in tax review proceedings (see *Plantech Housing v Conlan, supra; Matter of Stanford Assoc. v Board of Assessors of Town of Niskayuna,* 67 Misc 2d 477, affd 39 AD2d 800; *Matter of Magee v Board of Assessors of Town of Nelson,* 49 Misc 2d 499, affd *sub nom. Matter of Fieser v Board of Assessors of Town of Nelson,* 24 AD2d 1045; *Matter of Xerox Corp. v Sanger,* 79 Misc 2d 480; *Matter of Raymond v Honeywell, supra; Matter of Rapone v Shokey,* 43 Misc 2d 87). This jurisprudence has its

predicate in the potential effect of reduction on the school district tax base (*Matter of Stanford Assoc. v Board of Assessors of Town of Niskayuna, supra; Matter of Raymond v Honeywell, supra; Matter of Rapone v Shokey, supra*), liability for refunds under section 726 (subd 1, par [c]) of the Real Property Tax Law (*Plantech Housing v Conlan, supra; Matter of Xerox Corp. v Sanger, supra; Matter of Magee v Board of Assessors of Town of Nelson, supra*), and the requirement of subdivision 3 of section 708 of the Real Property Tax Law that notice of the proceeding be given to the affected school district (*Matter of Xerox Corp. v Sanger, supra; Matter of Stanford Assoc. v Board of Assessors of Town of Niskayuna, supra; Matter of Raymond v Honeywell, supra*). Whatever its significance elsewhere, however, refund liability has never been an intervention factor in Suffolk, where the custom of not imposing refund chargebacks on school districts has now been supplanted by the amendment of section 3 of the Suffolk County Tax Act (L 1980, ch 837, eff Sept. 1, 1980), extinguishing any liability for such refunds. Under the current provision, the burden of refunding school taxes rendered excessive through tax review proceedings rests with the county which may, in turn, charge its outlays back to the town involved (L 1980, ch 837). Although such chargebacks must be borne by school districts in most of the rest of the State (see Real Property Tax Law, § 726, subd 1, par [c]), the legislative bill jacket for the 1980 amendment of the Suffolk County Tax Act establishes that the new law merely continues long-standing procedure in that county under which refunding is a town and county obligation without school district participation. More precisely refined, then, the issue is whether the formal elimination of refund liability for Suffolk school districts has created a change of such proportion as to extinguish their right to intervene. I conclude that it has not. My analysis begins with an incontestable factual proposition — that almost everywhere the local real property tax base directly provides over half the revenues which finance educational operations (see *Board of Educ. v Nyquist,* 83 AD2d 217, 224, mod 57 NY2d 27). It therefore takes no depth of intellectual endeavor to deduce that decreases in the tax base diminish the ability to fund education. With two thirds of the real estate tax moneys collected in the Lindenhurst School District accruing to the district, its interest in the integrity of that revenue source is substantial (see *Matter of Teleprompter Manhattan CATV Corp. v State Bd. of Equalization & Assessment,* 34 AD2d 1033). Once the base has been reduced by judicial adjudication concerning a particular assessment, any future increase in that assessment is strongly impeded by principles of *res judicata,* for the value fixed in a tax review proceeding cannot properly be raised by an assessor in a future year unless there has been a leap in true value after the adjudication. As a consequence, the deadening effect of an adverse adjudication may have an extended degree of endurance. Another basis for the grant of intervention is statutory construction. When it mandated that notice of tax review litigation be given to school districts (Real Property Tax Law, former § 708, subd 2), the Legislature manifested an intent that such districts "should have the opportunity of seeking to sustain the assessments as made or that the [districts] at least should have forewarning of an impending change in valuations affecting its tax base" (*Long Is. R. R. Co. v City School Dist. of City of Long Beach,* 13 AD2d 782, 783; *Matter of Raymond v Honeywell,* 58 Misc 2d 903, *supra*). While the notice provision also serves to warn of refund liability (see *Matter of Magee v Board of Assessors of Town of Nelson,* 49 Misc 2d 499, affd *sub nom. Matter of Fieser v Board of Assessors of Town of Nelson,* 24 AD2d 1045, *supra*), it is significant that termination of that liability in Suffolk was not accompanied by deletion of the notice requirement. Since the notice requirement reflects legislative recognition of school district interest in tax review proceedings and

their outcome (cf. *Matter of Wallace v MVAIC*, 25 NY2d 384), and intervention is the only meaningful action a school district can take to protect that interest, it is. apparent to me that the Legislature intended that self-protection be a course open to school districts. Furthermore, since the Legislature is deemed to be aware of the jurisprudence permitting intervention (see *Transit Comm. v Long Is. R. R. Co.*, 253 NY 345, 355; *Orinoco Realty Co. v Bandler*, 233 NY 24, 30), its 1980 amendment to the Suffolk County Tax Act should not be construed as abrogating for Suffolk the general rule permitting intervention unless such an intention to abrogate has been clearly expressed (see *Burnside v Whitney*, 21 NY 148; McKinney's Cons Laws of NY, Book 1, Statutes, § 301, subd b). Not only has there been no express declaration of any intent to prevent intervention, but the legislative history of the amendment itself indicates that its sole purpose was to codify long-standing Suffolk County practice (see legislative bill jacket for L 1980, ch 837). Since that practice is unchanged by the amendment, I am mystified as to why it should be given the rather grandiose construction of barring Suffolk school districts from protecting their revenue sources. A final reason for granting intervention is the possibility that school district interests may not be represented adequately by town counsel (see CPLR 1012, subd [a], par 2; Siegel, New York Practice, § 180). The problem is not town attorney incompetence, but the fact that town and school district interests do not always coincide (see McLaughlin, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C1012:3, p 152). A town administration may be motivated by considerations apart from the merits of a particular case, for "resource constraints and even political considerations may govern the decision whether to litigate and how far" (see *Matter of Martin v Ronan*, 47 NY2d 486, 491). Judicial notice may be taken of the fact that a town's financial interest in the results of tax review litigation always will be considerably smaller than that of a school district within a town. With a tax base almost always larger and an individual tax bite always smaller than that of a school district, town finances are considerably less shaken by individual assessment reductions. The constraint on town incentives to indulge serious litigation expenses to protect any particular assessment is obvious. With only $6,510 in assessed value involved in the current proceeding, it is difficult to envision any strong town impulse to expend for defense sums beyond the town's own tax yield from the assessment. Thus, the degree and extent of resistance to be interposed to defend a particular assessment may differ according to the degree of benefit from that assessment and warrant school district participation to shield the benefit it receives (see *Matter of Teleprompter Manhattan CATV Corp. v State Bd. of Equalization & Assessment*, 34 AD2d 1033, *supra;* Siegel, New York Practice, § 180). I do not imply that towns are uninterested in protecting assessments or that, in most cases, their defense lacks vigor, but considering the difference in interest that sometimes may be involved, nothing in the recent amendment should be deemed to deprive Suffolk school districts of the right that districts elsewhere have — to contest reduction proceedings to the extent they believe requisite to the maintenance of their financial interest. My conclusion as to intervention has not been reached without consideration of *Matter of Sperry Rand Corp. v Board of Assessors of County of Nassau* (Supreme Ct, Nassau County, July 22, 1980, Farley, J., affd without opn 77 AD2d 822, mot for lv to app dsmd 52 NY2d 702), which denied a Nassau County school district's motion to intervene in a tax review proceeding. The case is distinguishable for two reasons. First, the motion to intervene in *Sperry Rand* was untimely because it was made on the eve of trial after the case had been pending for approximately eight years. Timeliness, a *sui generis* inquiry, depends on whether intervention will

confuse the issues or unduly delay litigation to the serious detriment of other parties (see 2 Weinstein-Korn-Miller, NY Civ Prac, par 1014.02). Since the school district in *Sperry Rand* could have sought intervention at an earlier stage of the proceedings, the lateness of its effort seriously weakened the merits of its claim to intervention (see *Krenitsky v Ludlow Motor Co.,* 276 App Div 511, mot for lv to app dsmd 301 NY 609). Second, school districts in Nassau County are not entitled to notice of tax review proceedings (Nassau County Administrative Code, § 6-17.3), a fact which arguably evinces some legislative intent not to permit intervention under the Nassau assessment scheme which is administered by county officials (see *Matter of Wallace v MVAIC,* 25 NY2d 384, *supra*). In any event, I cannot view this court's affirmance without opinion in *Sperry Rand* as disestablishing the body of general jurisprudence permitting school districts to intervene in tax review litigation. In sum, the interest of the appellant Board of Education in future tax revenues warrants its intervention to protect the source of those revenues. This interest survives the formal abolition of refund liability and justifies participation in the instant proceeding. Accordingly, I vote to reverse and to grant the motion to intervene.